# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.E.,<br><br>    Petitioner,<br><br>v.<br><br>TONYA ANDREWS[1], Facility Administrator,<br><br>    Respondent. | Case No.: 1:25-cv-00107-KES-SKO (HC)<br><br>FINDINGS AND RECOMMENDATIONS TO DENY RESPONDENT'S MOTION TO DISMISS (Doc. 11), GRANT PETITION FOR WRIT OF HABEAS CORPUS, AND DIRECT RESPONDENT TO PROVIDE BOND HEARING BEFORE AN IMMIGRATION JUDGE |

Petitioner is an immigration detainee proceeding with counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. This matter was referred to the undersigned for findings and recommendations pursuant to 28 U.S.C. § 636(b).

---

[1] Respondent moves to dismiss all unlawfully named officials. As explained by the Supreme Court in Rumsfeld v. Padilla, 542 U.S. 426, 430 (2004), the proper respondent in habeas cases is the "warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." In § 2241 cases involving non-citizen aliens detained at a private detention facility, the proper respondent is the warden of the private detention facility. Doe v. Garland, 109 F.4th 1188 (9th Cir. 2024). Accordingly, the Court recommends granting Respondent's motion and dismissing all unlawfully named officials. The proper respondent is Tonya Andrews, the Facility Administrator at Petitioner's detention facility.

1

Petitioner filed the instant petition on January 24, 2025. (Doc. 1.[2]) On May 18, 2025, Respondent filed a motion to dismiss the petition. (Doc. 9.) Respondent filed an amended motion to dismiss on March 21, 2025. (Doc. 11.) On April 17, 2025, Petitioner filed an opposition. (Doc. 12.) Respondent did not file a reply.

Petitioner challenges his continued detention by the Bureau of Immigration and Customs Enforcement ("ICE"). He claims his prolonged detention without a bond hearing violates his procedural due process rights under the Fifth Amendment. He claims he should be provided a bond hearing before an immigration judge ("IJ") at which the Government must justify his continued detention by clear and convincing evidence.

For the reasons discussed below, the Court will recommend Respondent's motion to dismiss be denied, the petition be granted, and Respondent be directed to provide a bond hearing before an immigration judge.

**I.   BACKGROUND**

Petitioner is a native and citizen of Russia. (Doc. 1-2 at 2.) In or around September 2022, while living in Moscow, Russian military agents came to his parents' home in Grozny and served conscription summonses naming Petitioner and his brother. (Doc. 1-2 at 2.) Petitioner refused, and fearing reprisal, fled Russia to the United States. (Doc. 1-2 at 2.) On October 19, 2022, Petitioner attempted to enter the United States without an entry document. (Doc. 9-1 at 3.) Petitioner was paroled into the United States and placed into removal proceedings as an arriving alien charged with removability. (Docs. 9-1 at 3; 1-2 at 2.) On November 22, 2022, Petitioner was enrolled in the Alternatives to Detention program ("ATD"). (Doc. 9-1 at 3.)

On or about September 22, 2023, ICE agents took Petitioner into custody without explanation. (Doc. 1-2 at 3.) Respondent states Petitioner's custody status had been redetermined and he was found to be an enforcement priority. (Doc. 9-1 at 3.) He was transported to Golden State Annex where he remains in custody to this day. (Doc. 1-2 at 3.)

---

[2] Citations are to ECF docket pagination.

2

On September 23, 2023, Petitioner submitted a request for bond release to the Immigration Judge ("IJ"). (Doc. 9-1 at 3.) Petitioner withdrew the request on October 19, 2023. (Doc. 9-1 at 3.)

On or about November 27, 2023, ICE issued a notice granting Petitioner a parole bond. (Doc. 1-2 at 3.) When Petitioner's family came to the facility to post bond, ICE officers notified them there had been a mistake and refused to accept the bond. (Doc. 1-2 at 3.) The ICE officer advised Petitioner that his supervisor had instructed him not to release any Russians. (Doc. 1-2 at 3.)

On or about December 8, 2023, Petitioner submitted his second request for bond release to the IJ. (Doc. 9-1 at 4.) The IJ set the matter for hearing for December 14, 2023, but Petitioner withdrew the request. (Doc. 9-1 at 4.)

On or about January 9, 2024, Petitioner submitted his third request for bond release. (Doc. 9-1 at 4.) On January 23, 2024, the IJ denied bond release after determining he had no jurisdiction to set bond since Petitioner was an arriving alien. (Doc. 9-1 at 40.)

On February 12, 2024, during removal proceedings, the IJ granted Petitioner's application for relief from removal. (Doc. 9-1 at 4, 43.) Respondent appealed to the Board of Immigration Appeals ("BIA"). (Doc. 9-1 at 48.)

On or about March 12, 2024, Petitioner filed his fourth request for bond release. (Doc. 9-1 at 4.) On March 19, 2024, the IJ again denied bond finding he lacked jurisdiction to issue a bond since Petitioner was considered an arriving alien. (Doc. 9-1 at 4.)

On March 20, 2024, Petitioner filed his fifth request for bond release. (Doc. 9-1 at 4.) On March 27, 2024, the IJ again denied bond for lack of jurisdiction. (Doc. 9-1 at 4.)

On June 28, 2024, the BIA sustained Respondent's appeal, vacated the IJ's grant of relief, and remanded the matter back to the IJ for further consideration of Petitioner's other application for relief from removal. (Doc. 9-1 at 4.) On November 14, 2024, the IJ denied all relief and ordered Petitioner removed to Russia. (Doc. 9-1 at 4.) On December 11, 2024, Petitioner appealed the decision to the BIA. (Doc. 9-1 at 4.) The appeal is currently pending.

Petitioner has remained in detention at Golden State Annex for a period of around 20 months. (Doc. 1-2 at 3.)

## II. DISCUSSION

### A. Statutory Background

A non-citizen who is present in the United States but has not been admitted is considered an applicant for admission. 8 U.S.C.A. § 1225(a)(1). Such applicant is subject to expedited removal if the applicant (1) is inadmissible because he or she lacks a valid entry document; (2) has not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility"; and (3) is among those whom the Secretary of Homeland Security has designated for expedited removal. 8 U.S.C. §§ 1225(b)(1)(A)(i), (iii)(I)–(II). Once "an immigration officer determines" that a designated applicant "is inadmissible," "the officer [must] order the alien removed from the United States without further hearing or review." 8 U.S.C.A. § 1225(b)(1)(A)(i).

If an applicant "indicates either an intention to apply for asylum" or "a fear of persecution," the immigration officer "shall refer the alien for an interview by an asylum officer." 8 U.S.C.A. §§ 1225(b)(1)(A)(i)–(ii). The point of this screening interview is to determine whether the applicant has a "credible fear of persecution." § 1225(b)(1)(B)(v). If the asylum officer finds an applicant's asserted fear to be credible, the applicant will receive "full consideration" of his asylum claim in a standard removal hearing. 8 C.F.R. § 208.30(f); see 8 U.S.C. § 1225(b)(1)(B)(ii). If the asylum officer finds that the applicant does not have a credible fear, a supervisor will review the asylum officer's determination. 8 C.F.R. § 208.30(e)(8). If the supervisor agrees with it, the applicant may appeal to an immigration judge, who can take further evidence and "shall make a de novo determination." 8 U.S.C.A. §§ 1003.42(c), (d)(1); see 8 U.S.C. § 1225(b)(1)(B)(iii)(III).

Regardless of whether the applicant receives full or expedited review, he or she is not entitled to immediate release. Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 111 (2020). They "shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." Id. (citing 8 U.S.C.A. § 1225(b)(1)(B)(iii)(IV)). Likewise, applicants who are found to have a credible fear may also be detained pending further consideration of their asylum applications. Id. (citing 8 U.S.C.A. § 1225(b)(1)(B)(ii)). In either case, the applicant must be detained until the conclusion of those proceedings. Jennings v. Rodriguez, 583 U.S. 281, 297 (2018). However,

an applicant "may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.'" Id. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A) and citing 8 C.F.R §§ 212.5(b), 235.3 (2017)).  Said parole request is considered by designated ICE Enforcement Removal Operations ("ERO") officers. 8 C.F.R. § 212.5(a). "Such parole, however, 'shall not be regarded as an admission of the alien.'" Jennings, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)).

B.   Due Process in Prolonged Immigration Detention

The parties acknowledge that Petitioner has been deemed inadmissible and ordered removed from the United States by an IJ.  Further, Petitioner is subject to mandatory detention pursuant to § 1225(b) and has been detained for approximately 20 months pending removal. Petitioner contends he has been unreasonably detained without a bond hearing.  He argues that due process requires he should be granted a bond hearing before an immigration judge to determine whether he is a risk of flight or danger to the community.

The Fifth Amendment's Due Process Clause provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings," Reno v. Flores, 507 U.S. 292, 306 (1993), and "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," Zadvydas v. Davis, 533 U.S. 678, 690 (2001). The Supreme Court nevertheless has recognized that "[d]etention during deportation proceedings is a constitutionally permissible part of [the deportation] process." Demore v. Kim, 538 U.S. 510, 531 (2003); see also Carlson v. Landon, 342 U.S. 524, 538 (1952) ("[d]etention is necessarily a part of this deportation procedure").

In analyzing whether prolonged detention violates due process, many courts have looked to Justice Kennedy's concurrence in Demore, which clarified that, "since the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Id. at 532 (Kennedy, J., concurring). Several courts including the Third, Sixth, and Ninth Circuit, as well as numerous district courts, have found that unreasonably long detention periods may violate the due process clause. See, e.g., Rodriguez v. Marin ("Rodriguez IV"), 909 F.3d 252, 256 (9th Cir. 2018) (the Ninth Circuit asserted

"grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional...."); Diop v. ICE/Homeland Sec., 656 F.3d 221, 235 (3d Cir. 2011) (detention of an alien for a period of nearly three years without further inquiry into whether it was necessary to ensure his appearance at the removal proceedings or to prevent a risk of danger to the community, was unreasonable, and, therefore, a violation of the Due Process Clause"); Jensen v. Garland, 2023 WL 3246522 (C.D.Cal. 2023); M.T.B. v. Byers, 2024 WL 3881843 (E.D. Ky. 2024); Sanchez-Rivera v. Matuszewski, 2023 WL 139801 (S.D. Cal. 2023); Banda v. McAleenan, 385 F.Supp.3d 1099 (W.D. Wash. 2019).

1. The Mathews Test

In analyzing whether a due process violation has occurred in this case, Petitioner urges the Court to employ the Mathews[3] test. Respondent contends that multi-factor balancing under Mathews is not supported by Supreme Court authority and inappropriate in this context.

The Ninth Circuit has noted that many courts have applied the Mathews test in considering due process challenges in the immigration context. Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022). The Ninth Circuit stated that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Id. at 1206-07. Yet, the Court notes that the Supreme Court, when confronted with constitutional challenges to immigration detention, has not resolved them through express application of Mathews. See, e.g., Demore, 538 U.S. at 523, 526–29; see also Dusenbery v. United States, 534 U.S. 161, 168, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002) ("[W]e have never viewed Mathews as announcing an all-embracing test for deciding due process claims.").

Nevertheless, most district courts in the Ninth Circuit have employed the Mathews test in the context of evaluating whether due process entitles a petitioner to a bond hearing. See, e.g., Sho v. Current or Acting Field Off. Dir., 2023 WL 4014649 (E.D. Cal. 2023); I.E.S. v. Becerra, 2p23 WL 6317617; Jensen v. Garland, 2023 WL 3246522, at *4 (C.D. Cal. 2023); Galdillo v. U.S. Dep't of Homeland Sec., 2021 WL 4839502, at *3 (C.D. Cal. 2021); Jimenez v. Wolf, 2020 WL 510347, at *3

---

[3] Mathews v. Eldridge, 424 U.S. 319 (1976).

1  (N.D. Cal. 2020). Also, the Ninth Circuit has noted the common use of the Mathews test and assumed
2  (without deciding) that it applies to due process claims in the immigration detention context.
3  Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Thus, the Court finds application
4  of the Mathews test in this case appropriate.

5  Under the Mathews test, the "identification of the specific dictates of due process generally
6  requires consideration of three distinct factors." Mathews, 424 U.S. at 334–35.  "First, the private
7  interest that will be affected by the official action; second, the risk of an erroneous deprivation of such
8  interest through the procedures used, and the probable value, if any, of additional or substitute
9  procedural safeguards; and finally, the Government's interest, including the function involved and the
10 fiscal and administrative burdens that the additional or substitute procedural requirement would
11 entail." Id. at 335.

12 In the first factor, the Court must evaluate Petitioner's private interest. Petitioner has now been
13 detained approximately 20 months. Compared to the six-month presumptive period set forth in
14 Zadvydas beyond which continued detention becomes prolonged, Petitioner's 20-month detention
15 qualifies as prolonged. Zadvydas, 533 U.S. at 701. The Ninth Circuit has also held that an individual's
16 private interest in "freedom from prolonged detention" is "unquestionably substantial." Singh v.
17 Holder, 638 F.3d 1196, 1208 (9th Cir. 2011).

18 In Rodriguez Diaz v. Garland, the Ninth Circuit stated that "in evaluating the first prong of the
19 Mathews analysis, we cannot simply count his months of detention and leave it at that. We must also
20 consider the process he received during this time, the further process that was available to him, and the
21 fact that his detention was prolonged due to his decision to challenge his removal order." 53 F.4th at
22 1208.  Here, unlike the petitioner in Rodriguez Diaz, Petitioner has not received the benefit of a bond
23 hearing.  Respondent claims Petitioner has received three bond reviews by an IJ, and therefore, he has
24 had the due process protections of a bond hearing on three occasions. As Petitioner points out,
25 however, none of those hearings involved a full and fair review. In all three hearings, the IJ denied
26 bond finding he lacked jurisdiction to grant bond release. The Ninth Circuit noted that detentions
27 longer than six months were considered "prolonged" in cases such as this where "no individualized
28 bond hearings had taken place at all." Id. at 1207. The appellate court found this distinction

7

significant. Id. Thus, Petitioner's private interest in being free from prolonged detention of approximately 20 months weighs in his favor.

As to the second factor, "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," Mathews, 424 U.S. at 335, the Court finds this factor also weighs in favor of Petitioner. The "risk of an erroneous deprivation of [a petitioner's] interest is high" where "[h]e has not received any bond or custody redetermination hearing[.]" Jimenez, 2020 WL 510347, at *3. Thus, the probable value of additional procedural safeguards, i.e., a bond hearing, is high, because Respondents have provided virtually no procedural safeguards at all. Given that Petitioner has been held without a bond hearing for over a year and a half, and it is not clear when detention will end[4], the risk of erroneous deprivation weighs in favor of granting a bond hearing.

In the third factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." Mathews, 424 U.S. at 335. As previously discussed, the government has a strong interest in effecting removal. Demore, 538 U.S. at 531. As other courts have recognized, however, the key government interest at stake here "is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing." Zagal-Alcaraz v. ICE Field Office Director, 2020 WL 1862254, at *7 (D. Or. 2020) (collecting cases). Here, the government's asserted interest is hinged on mere speculation about Petitioner's risk of flight or dangerousness. Petitioner seeks a bond hearing, not unqualified release. Providing a bond hearing would not undercut the government's asserted interest in effecting removal. Indeed, the purpose of a bond hearing is to inquire whether the alien represents a flight risk or danger to the community. See In re Guerra, 24 I.&N. Dec. 37 (B.I.A. 2006).

---

[4] Respondent states removal is imminent as Petitioner has been denied asylum, the matter is on appeal, and Petitioner will be removed in short order as soon as the appeal is decided. The Court is not persuaded. As the record of this case demonstrates, the matter may or may not be final as soon as the appeal is denied. It is possible, as before, that the matter will be remanded to the IJ for further findings. If the appeal is denied, it is also possible that Petitioner may pursue further relief. In addition, relations between the United States and Russia are currently strained given the Russia-Ukraine war. Although no evidence on this point has been submitted, the Court questions whether removal would be swiftly accomplished should proceedings conclude in the Government's favor.

Given "the minimal cost of conducting a bond hearing, and the ability of the IJ to adjudicate the ultimate legal issue as to whether Petitioner's continued detention is justified," courts have concluded that "the government's interest is not as weighty as Petitioner's." Zagal-Alcaraz, 2020 WL 1862254, *7 (quoting Lopez Reyes v. Bonnar, 362 F. Supp. 3d 762, 777 (N.D. Cal. 2019)). The Court agrees with this analysis. Although the Government has a strong interest, it is outweighed by Petitioner's interest.

In sum, the three Mathews factors weigh in Petitioner's favor and outweigh the government's interest in further detention without inquiry into whether he represents a flight risk or danger to the community. The Court thus finds that Petitioner's prolonged detention without a bond hearing before an IJ violates his Fifth Amendment due process rights.

**III.     RECOMMENDATION**

For the foregoing reasons, the Court hereby RECOMMENDS that Respondent's motion to dismiss be denied, the petition for writ of habeas corpus be granted, and Respondent be ordered to provide Petitioner with a bond hearing before an immigration judge at which Respondent must justify Petitioner's continued detention by clear and convincing evidence.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within twenty-one (21) days after being served with a copy of this Findings and Recommendation, a party may file written objections with the Court and serve a copy on all parties. Id. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendation" and shall not exceed fifteen (15) pages, except by leave of court with good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v.

Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014).  This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

IT IS SO ORDERED.

Dated:   **May 15, 2025**                                    /s/ *Sheila K. Oberto*
                                                                                  UNITED STATES MAGISTRATE JUDGE